UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

STEVEN DOMINGUEZ and MARC HOLT,

                            Plaintiffs,

    -against-

THE CITY OF NEW YORK, a municipal entity; New York City Police Officer JEREMIAH WILSON (Shield No. 8655), in his individual capacity; New York City Police Officer PAUL SCOTT (Shield No. 16416), in his individual capacity; and "JOHN and/or JANE DOES" 1, 2, 3, etc. (whose identity are unknown but who are known to be personnel of the New York City Police Department), all of whom are sued in their individual capacities,

                            Defendants.

------------------------------------------------------------------ X

**COMPLAINT**

**JURY TRIAL**

Plaintiffs STEVEN DOMINGUEZ and MARC HOLT, by their attorneys, Beldock Levine & Hoffman LLP, as and for their complaint, allege as follows:

**PRELIMINARY STATEMENT**

1. This civil rights action seeks redress under 42 U.S.C. § 1983 and New York State law for injuries plaintiffs sustained from the unconstitutional conduct of defendants THE CITY OF NEW YORK, New York City Police Officer JEREMIAH WILSON (Shield No. 8655), PAUL SCOTT (Shield No. 16416), and New York City Police Officers "JOHN and/or JANE DOES" 1, 2, 3, etc.

2. Plaintiffs seek redress for substantial injuries they suffered when defendant Officers JEREMIAH WILSON, PAUL SCOTT, and JOHN AND/OR JANE DOES 1, 2, 3, etc. unlawfully detained, falsely arrested, and maliciously prosecuted them. Steven Dominguez was assaulted by

defendant officers and sustained serious physical injuries, which required treatment in a hospital. Both plaintiffs were wrongfully incarcerated for nearly 24 hours.

3. Plaintiffs seek (i) compensatory damages for physical injuries, psychological and emotional distress, and financial loss caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iii) such other and further relief, including costs and attorney's fees, as this Court deems equitable and just.

## JURISDICTION

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4), as this action seeks redress for the violation of plaintiffs' constitutional and civil rights.

5. Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a) over any and all state law claims that are so related to the federal claims that they form part of the same case or controversy.

## VENUE

6. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to plaintiffs' claims took place.

## JURY DEMAND

7. Plaintiffs demand a trial by jury in this action on each and every one of their claims for which jury trial is legally available.

## THE PARTIES

8. Plaintiff STEVEN DOMINGUEZ is a citizen of the United States, is and was at all times relevant to this complaint a resident of New York County, City, and State.

9. Plaintiff MARC HOLT is a citizen of the United States, is and was at all times relevant to this complaint a resident of New York County, City, and State.

10. Defendant THE CITY OF NEW YORK ("the City") is a municipal entity created and authorized under the laws of the State of New York.

11. The City is authorized by law to maintain a police department, and does maintain the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

12. Defendants JEREMIAH WILSON (Shield No. 8655), PAUL SCOTT (Shield No. 16416), and JOHN and/or JANE DOES 1, 2, 3, etc. ("DOES") (collectively "Individual Defendant Officers") are NYPD Police Officers who unlawfully detained, frisked, assaulted, and arrested Plaintiffs without suspicion of any illegal activity and lodged false criminal charges against them.

13. Upon information and belief, defendant Officers WILSON, SCOTT, and DOES are still NYPD Police Officers.

14. At all times relevant herein, defendant Officers WILSON, SCOTT, and DOES have acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the City and/or the NYPD, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the City and/or the NYPD.

15. At all times relevant herein, defendant Officers WILSON, SCOTT, and DOES violated clearly established rights and standards under the Fourth and Fourteenth Amendments to the United States Constitution, of which a reasonable police officer in their circumstances would have known.

**COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW**

16. Plaintiffs served Notices of Claim upon the City of New York within ninety days of the events giving rise to her claims.

17. Mr. Dominguez attended a hearing pursuant to section 50-h of the New York General Municipal Law on February 11, 2016.

18. Mr. Holt attended a hearing pursuant to section 50-h of the New York General Municipal Law on April 7, 2016.

19. More than thirty days have elapsed since plaintiff served their Notices of Claim and the City has not offered adjustment or payment of their claim.

20. This action is filed within one year and ninety days of the events giving rise to plaintiff's claims.

## STATEMENT OF FACTS

21. Marc Holt and Steven Dominguez are life-long residents of Manhattan.

22. In the late evening of September 11, 2015, into the early morning of September 12th, plaintiffs were standing and talking in front of Mr. Holt's 7th Avenue apartment building.

23. Mr. Dominguez was visiting his cousin, who lives in the same building as Mr. Holt.

24. At approximately 1 AM on September 12, 2015, a car drove slowly past the area plaintiffs were talking, with the car's occupants intensely staring at plaintiffs.

25. The car came to a stop on the southwest corner of 7th Avenue and West 119th Street.

26. Two people dressed in street clothes exited the car and started running toward plaintiffs.

27. Plaintiffs later learned that these individuals were plainclothes NYPD officers, including, upon information and belief, Defendants Jeremiah Wilson (Shield No. 8655) and Paul

Scott (Shield No. 16416), but the officers did not say anything or in any way identify themselves as NYPD officers as they approached plaintiffs.

28.  Fearful for their safety, plaintiffs ran toward the entrance of Mr. Holt's apartment building, unlocked the front door, and entered the building.

29.  Mr. Dominguez ran up the stairs towards his cousin's apartment.

30.  Mr. Holt attempted to close the front door, but one of the officers stuck his foot into the doorway, preventing Mr. Holt from closing and locking the door.

31.  The officers forcefully pushed the front door open, threw Mr. Holt against the interior door, and ran toward Mr. Dominguez.

32.  Mr. Holt experienced pain to his back as a result of being pushed into the door.

33.  The officers eventually caught up to Mr. Dominguez and pushed him.

34.  As a result of the officers' push, Mr. Dominguez lost his balance, hit his head against the wall and stair railing, and fell to the ground unconscious.

35.  The officers surrounded Mr. Dominguez's unconscious body and began punching and kicking him.

36.  At some point, Mr. Dominguez's cell phone fell to the floor and at least one of the officers stomped on it, breaking the phone.

37.  At approximately this time, Mr. Holt ran up the stairs and saw the Mr. Dominguez laying helplessly on the ground as the officers punched, kicked, and kneed him.

38.  Mr. Holt asked the officers what they were doing.

39.  In response, one of officers drew his gun, pointed it at Mr. Holt, and ordered Mr. Holt to "Get the fuck down the stairs."

40. Mr. Holt complied with the officer's order, walked down the stairs, and stood in the building's lobby.

41. Approximately ten minutes later, the officers walked down the stairs and through the lobby carrying an unconscious, handcuffed Mr. Dominguez by his arms and legs with his body horizontal to the ground.

42. Mr. Holt called out Mr. Dominguez's name several times.

43. Mr. Dominguez did not react or respond.

44. Concerned for his friend's health and well-being, Mr. Holt approached the officers and asked if Mr. Dominguez was okay.

45. One officer yelled to Mr. Holt "mind your business."

46. Mr. Holt responded that Mr. Dominguez was his friend, expressed his fear that Mr. Dominguez was not responsive, and asked where the officers were taking him.

47. One of the officers responded, in sum and substance, "I told you to mind your fucking business."

48. The officers continued to carry Mr. Dominguez out of Mr. Holt's apartment building.

49. Mr. Holt followed the officers and continued to ask if Mr. Dominguez was okay.

50. When the officers got outside, they laid Mr. Dominguez on the sidewalk.

51. Mr. Holt approached Mr. Dominguez and attempted to check on him.

52. One officer pushed Mr. Holt and said, in sum and substance, "You say one more word and I'm fucking arresting you."

53. Mr. Holt asked the officer for permission to speak with Mr. Dominguez.

54. The Officer responded, in sum and substance, "Turn around, you're going to fucking jail."

55. Without any reasonable suspicion that Mr. Holt had committed, was committing, or was about to commit an offense, the officer pushed him against a parked car, forced his hands behind his back, and handcuffed him.

56. Mr. Holt asked the officer why he was being arrested.

57. The officer did not respond.

58. Mr. Holt was taken to an unmarked car, forced into the backseat, and waited approximately one hour before he was driven to the 28th Precinct.

59. After Mr. Holt was placed in the back of the unmarked car, Mr. Dominguez was placed in the back of a separate car and eventually taken to St. Luke's hospital.

60. At the 28th Precinct, Mr. Holt was processed and taken to the holding cell.

61. During this time, an officer told Mr. Holt, in sum and substance, "If you would have just shut the fuck up and minded your own business you would have never been arrested."

62. The officer added, in sum and substance, "You should have minded your own business because you could have got smoked."

63. While in the holding cell Mr. Holt overheard several officers at the precinct laughing and joking about assaulting Mr. Dominguez.

64. Despite the utter lack of evidence that Mr. Holt had committed a crime, Officer Wilson signed the complaint charging Mr. Holt with Obstructing Governmental Administration in the Second Degree, in violation of New York Penal Law §195.05.

65. Mr. Holt was eventually transferred to central booking, arraigned at approximately 10 PM on September 12, 2015, and released on his own recognizance.

66. Mr. Holt was in police custody for approximately 21 hours.

67. Mr. Holt was forced to appear in court approximately four times before the baseless charges against him were dismissed, upon information and belief, upon the order of the District Attorney's office.

*Dominguez's Injuries and Hospitalization*

68. Mr. Dominguez did not regain consciousness until he was in a hospital bed at St. Luke's Hospital.

69. When Mr. Dominguez woke up he was handcuffed, with his hands behind his back, and the weight of his body resting on his handcuffed wrists and hands.

70. The handcuffs were applied so tightly that Mr. Dominguez could not feel his wrists when he awoke.

71. Mr. Dominguez asked the officers to loosen the handcuffs.

72. The officers eventually loosed one of the handcuffs and removed the cuff from Mr. Dominguez's other wrist, attaching it to his bedframe.

73. At one point, Mr. Dominguez stated to one of the officers that he didn't do anything wrong, that the officer had no evidence that he did do anything wrong, and asked why he was under arrest.

74. In response, the officer closed the door to Mr. Dominguez's examination room and said that he was going to physically assault him.

75. Before the officer was able to harm Mr. Dominguez, a nurse walked into the room.

76. When nurses began attending to Mr. Dominguez, defendant officers said that he was faking his injuries, adding, that Mr. Dominguez was, in sum and substance, "lying about his injuries and being a little bitch."

77. Mr. Dominguez described his injuries to the nurses, stating that he was experiencing pain, *inter alia*, in his head, hand, back, and neck.

78. Defendant officers continued to interrupt Mr. Dominguez's examination by joking with the nurses.

79. Mr. Dominguez was taken for a CT scan and diagnosed with abrasions to his temple region.

80. As a result of defendant officers' interference with Mr. Dominguez's examination, several injuries went undiagnosed.

81. Mr. Dominguez remained at the hospital until approximately 6 AM on September 12, 2015.

*Dominguez Processing, Arraignment, and Subsequent Hospital Visit*

82. After being released from the hospital, Mr. Dominguez was taken to the 28th Precinct, where he was processed and placed in a holding cell.

83. Despite the utter lack of evidence that Mr. Dominguez had committed a crime, Officer Wilson signed the complaint charging Mr. Dominguez with Obstructing Governmental Administration in the Second Degree, in violation of New York Penal Law §195.05, and Disorderly Conduct, in violation of New York Penal Law § 240.20(2).

84. Mr. Dominguez was not told why he was under arrest while he was at the precinct.

85. Mr. Dominguez was transferred to central booking, arraigned, and released on his own recognizance at approximately 11 PM on September 12, 2015.

86. Mr. Dominguez was in police custody for approximately 22 hours.

87. After being released from custody, Mr. Dominguez went back to his cousin's apartment and saw Mr. Holt.

88. Mr. Holt was concerned about Mr. Dominguez's health and escorted him to St. Luke's hospital for an examination.

89. Mr. Dominguez was examined a second time by doctors and nurses from St. Luke's.

90. During his second examination, doctors found nerve damage to Mr. Dominguez's hands and wrists, a lower back strain, contusions, and abrasions.

*Dominguez's Subsequent Court Appearances*

91. Mr. Dominguez was forced to appear in court on approximately two occasions following his arrest.

92. In December 2015, Mr. Dominguez accepted an adjournment on contemplation of dismissal.

*Aftermath*

93. Defendant officers continue to patrol plaintiffs' neighborhood and have harassed plaintiffs on multiple occasions.

94. For example, as Mr. Dominguez was walking down the street, he saw one of the officers who assaulted him. The officer pointed his finger at Mr. Dominguez, mimicking a gun, and pretended to shoot Mr. Dominguez.

95. On another occasion, Mr. Dominguez was walking down the street with his cousin when Officer Wilson saw them, got out of his car, cursed at them, and then walked back to his car and drove away.

96. After the charges against Mr. Holt were dismissed, he was lawfully crossing a street near his apartment, when a car that had been stopped in front of the crosswalk suddenly jumped forward, approaching and nearly hitting Mr. Holt. Mr. Holt noticed that the officers that unlawfully

assaulted and falsely arrested him and Mr. Dominguez on September 12, 2015 were in the car. They yelled references to Mr. Holt's false arrest and Mr. Dominguez's assault.

97. The officers have told plaintiffs on multiple occasions that they will not succeed in a civil lawsuit against the officers for their unlawful behavior on September 12, 2015.

98. Defendants' conduct caused plaintiffs to suffer loss of liberty, loss of income, emotional and psychological pain, embarrassment, humiliation, and harm to their reputation.

99. As a result of the individual defendants' conduct, Mr. Dominguez sustained serious physical injuries that have caused him substantial pain and suffering and required medical treatment.

100. As a result of the officers' conduct, plaintiffs have experienced humiliation and embarrassment and suffered – and continue to suffer – severe psychological and emotional distress.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 – Individual Defendant Officers' Violations of Plaintiff's Fourth and Fourteenth Amendment Rights

101. Plaintiffs reallege and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

102. In committing the acts and omissions complained of herein, defendants WILSON, SCOTT, and DOES 1, 2, 3, etc. acted under color of state law to deprive plaintiffs of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

   a. the right to be free from unreasonable search and seizure;

   b. the right to be free from arrest without probable cause;

   c. the right to be free from arrest without excessive force;

    d. the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion, or legal justification, and of which detention plaintiff was aware and to which he did not consent; and

    e. the right to be free from deprivation of liberty without due process of law.

103. In committing the acts and omissions complained of herein, defendants WILSON, SCOTT, and DOES 1, 2, 3, etc. breached their affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

104. As a direct and proximate result of defendants WILSON, SCOTT, and DOES 1, 2, 3, etc. deprivation of plaintiffs' constitutional rights, plaintiff suffered the injuries and damages set forth above.

105. The unlawful conduct of defendants WILSON, SCOTT, and DOES 1, 2, 3, etc. was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
### Violations of the New York State Constitution

106. Plaintiffs reallege and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

107. Such conduct breached the protections guaranteed to plaintiffs by the New York State Constitution, including but not limited to, Article 1, §§ 1, 11, and 12, and including the following rights:

    a. freedom from unreasonable search and seizure of his person and property;

    b. freedom from arrest without probable cause;

    c. freedom from use of excessive force;

    d. freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which wrongful detention plaintiff was aware and did not consent;

    e. freedom from the lodging of false charges against him by police officers and prosecutors, including on information and belief, by some or all of the individual defendants; and

    f. freedom from deprivation of liberty without due process of law.

108. As a direct and proximate result of defendants' deprivations of plaintiffs' rights, privileges, and immunities guaranteed by the New York State Constitution, he suffered the injuries and damages set forth above.

### THIRD CAUSE OF ACTION
### Assault and Battery

109. Plaintiffs reallege and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

110. Defendants WILSON, SCOTT, and DOES 1, 2, 3, etc., without just cause, wilfully and maliciously used physical force against plaintiffs causing him injuries.

111. Defendants WILSON, SCOTT, and DOES 1, 2, 3, etc. committed the foregoing acts intentionally, wilfully, and with malicious disregard for plaintiffs' rights, and are therefore liable for punitive damages.

### FOURTH CAUSE OF ACTION
### False Imprisonment

112. Plaintiffs reallege and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

113. Defendants WILSON, SCOTT, and DOES 1, 2, 3, etc., through the foregoing acts, caused plaintiffs to be wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which detention plaintiffs were aware and to which they did not consent.

114. Defendants WILSON, SCOTT, and DOES 1, 2, 3, etc. committed the foregoing acts intentionally, willfully, and with malicious disregard for plaintiffs' rights and are therefore liable for punitive damages.

## FIFTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

115. Plaintiffs reallege and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

116. Defendants WILSON, SCOTT, and DOES 1, 2, 3, etc., through the foregoing acts, did commit extreme and outrageous conduct and thereby intentionally, and/or recklessly caused plaintiffs to experience severe mental and emotional distress, pain, suffering, and damage to name and reputation.

117. Defendants WILSON, SCOTT, and DOES 1, 2, 3, etc. committed the foregoing acts intentionally, willfully, and with malicious disregard for plaintiffs' rights and are therefore liable for punitive damages.

## SIXTH CAUSE OF ACTION
### Negligence

118. Plaintiffs reallege and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

119. Defendants WILSON, SCOTT, and DOES 1, 2, 3, etc. owed plaintiff a duty of care, including the duty to exercise due care in the course of their duties as NYPD officers and the duty to protect citizens from the intentional misconduct of other NYPD officers.

120. Defendants WILSON, SCOTT, and DOES 1, 2, 3, etc., through the foregoing acts, negligently failed to use due care in the performance of their duties in that they failed to perform their duties with the degree of care that a reasonably prudent and careful officer would have used under similar circumstances.

121. All of these acts were performed without any negligence on the part of plaintiffs and were the proximate cause of the injuries to plaintiffs.

## SEVENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress

122. Plaintiffs reallege and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

123. As police officers acting in the performance of their duties, defendants WILSON, SCOTT, and DOES 1, 2, 3, etc. owed plaintiffs a duty of care.

124. In breach of that duty, defendants WILSON, SCOTT, and DOES 1, 2, 3, etc. endangered plaintiffs' safety and caused him to fear for his safety.

125. As a result, plaintiffs suffered emotional distress.

## EIGHTH CAUSE OF ACTION
### Malicious Prosecution

126. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

127. A criminal proceeding was commenced against plaintiffs in New York County Criminal Court.

128. The proceeding was initiated based on false allegations by Officer WILSON included in the criminal complaint.

129. The criminal proceedings were terminated in plaintiffs' favor when the charges against them were dismissed.

130. There was no probable cause for any of the charges brought against plaintiffs.

131. The Defendant WILSON committed the foregoing acts intentionally, willfully, and with malicious disregard for plaintiffs' rights and are therefore liable for punitive damages.

132. The City is vicariously liable for the conduct of the individual NYPD defendants as set forth herein.

## NINTH CAUSE OF ACTION
**Negligent Hiring, Training, and Supervision Under State Law;
Defendant City of New York**

133. Plaintiffs reallege and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

134. The City is liable to plaintiffs because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants, and/or employees employed and/or the NYPD with regard to their aforementioned duties.

## TENTH CAUSE OF ACTION
*Respondeat Superior*

135. Plaintiffs reallege and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

136. At all relevant times, defendant Officers WILSON, SCOTT, and DOES 1, 2, 3, etc. were employees of the City and were acting within the scope of their employment.

137. The City is therefore vicariously liable under the doctrine of r*espondeat superior* for the actions of defendant Officers WILSON, SCOTT, and DOES 1, 2, 3, etc. set forth herein.

## DEMAND FOR RELIEF

**WHEREFORE**, plaintiffs demands the following relief against the defendants, jointly and severally:

   (a)   compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

   (b)   punitive damages from Officers WILSON, SCOTT, and DOES 1, 2, 3, etc. to the extent allowable by law;

    (c)    attorney's fees;

    (d)    the costs and disbursements of this action;

    (e)    interest; and

    (f)    such other and further relief as this Court deems just and proper.

Dated: September 29, 2017
       New York, New York

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH Suite/2600
New York, New York 10016
(212) 490-0400

_____
Keith Szczepanski

*Attorneys for Plaintiffs Steven Dominguez and Marc Holt*